IN THE UNITED STATES DISTRICT COURT
            FOR THE NORTHERN DISTRICT OF WEST VIRGINIA


DONALD CHOYA BATES,

        Plaintiff,

v.                                    Civil Action No. 5:16CV161
                                                          (STAMP)
JENNIFER SAAD, Warden,
FCI Hazelton,
R. MULAC, Correctional Officer,
FCI Hazelton,
R. SMITH, Correctional Officer,
FCI Hazelton,
C. FLOYD, Correctional Officer,
FCI Hazelton,
J. SQUIRES, Correctional Officer,
FCI Hazelton,
M. DOYLE, Correctional Officer,
FCI Hazelton
and UNKNOWN PARTIES,

        Defendants.


              **MEMORANDUM OPINION AND ORDER**
              **ADOPTING AND AFFIRMING MAGISTRATE**
              **JUDGE'S REPORT AND RECOMMENDATION,**
              **GRANTING DEFENDANTS' MOTION TO DISMISS,**
              **DENYING PLAINTIFF'S MOTION FOR DISCOVERY**
              **AND OVERRULING PLAINTIFF'S OBJECTIONS**

     The pro se[1] plaintiff filed this civil action asserting claims

under Bivens v. Six Unknown Federal Narcotics Agents, 403 U.S. 388

(1971).  The case was referred to United States Magistrate Judge

Michael John Aloi.  The defendants filed a motion to dismiss or,

alternatively, for summary judgment, and the plaintiff filed a

motion for discovery.  Magistrate Judge Aloi issued a report

───────────────────────

     [1]"Pro se" describes a person who represents himself in a court
proceeding without the assistance of a lawyer. Black's Law
Dictionary 1416 (10th ed. 2014).

recommending that the defendants' motion be granted and that the plaintiff's motion be denied as moot. The plaintiff filed timely objections to the report and recommendation.

## I. Background

The plaintiff, Donald Choya Bates, raises claims of excessive force, deliberate indifference to serious medical needs, and destruction of personal property arising out of an incident at the federal correctional institution in Hazelton, West Virginia, ("FCI Hazelton"). The plaintiff alleges in his complaint that, on December 10, 2015, he was assaulted by an FCI Hazelton staff member who accused him of not saying "good morning." ECF No. 1 at 9. The plaintiff alleges that he was grabbed by the top front of his shirt or neck, thrown to the floor of his cell, kicked and punched, jumped on, and taken to an outside stairwell where he was dragged backwards down the stairs. The plaintiff alleges that the beating and kicking of his face and head continued even through he was handcuffed and not resisting. After the assault, the plaintiff alleges that he was placed in a holding cell for "numerous hours," not fed anything, and not provided with medical care. ECF No. 1 at 12. The plaintiff also alleges that all of his legal and personal property was destroyed by "[O]fficer R. Mulac or whoever packed [his] property." Id. Next, the plaintiff alleges that he was "sent to a USP from a lower security" institution and transferred far away from his family because they "jacked up [his] points

beyond the norm." Id. Lastly, the plaintiff alleges that the staff participated in creating a false incident report against him, which blamed him for the altercation and resulted in the loss of 40 days good time and other sanctions. As a result of the alleged assault, the plaintiff alleges that he sustained a dislocated or broken middle finger, injury to his lower back, a swollen right eye, and bruises and/or scarring to both elbows, knees, wrists, and his face.

The plaintiff maintains that he has exhausted his administrative remedies with regard to all claims in his complaint. For relief, the plaintiffs requests $50,000,000.00 in compensation for his personal injuries and $2,000,000.00 in compensation for the destruction of his personal property. The plaintiff also requests injunctive relief in the form of dismissal of the incident report and the sanctions against him, the restoration of his 40 days of lost good time, that he be "restored back to FCI," and that all of the officers involved be held accountable for their actions.

The defendants' motion to dismiss or, alternatively, for summary judgment, contends that the complaint should be dismissed because: (1) defendants Saad, Doyle, Floyd, and Squires had no personal involvement in the plaintiff's alleged incident of excessive force, and thus they should be dismissed from this action; (2) the use of force by defendants Mulac and Smith was a good faith effort to restore discipline to an unrestrained

aggressive inmate, and was not excessive; (3) the plaintiff's version of events is discredited by the video and documentary evidence submitted to the Court for in camera review; (4) as government officials performing discretionary functions, the defendants are entitled to qualified immunity; (5) the plaintiff's claims regarding his disciplinary actions over his incident report are not cognizable in a Bivens action but must be brought under 28 U.S.C. § 2241; (6) the plaintiff's claim that he was left without medical attention for hours is contradicted by documentary evidence; and (7) the plaintiff's claim that his property was destroyed is contradicted by documentary evidence.

In response to the defendants' motion, the plaintiff contends that the defendants have withheld parts of the video surveillance recording that would reveal the guards assaulting him. The plaintiff further contends that the sworn declarations of the prison guards regarding the incident are conflicting and inconsistent with their statements. Lastly, the plaintiff argues that the copies of his medical records produced by the defendants are inconsistent with the guards' statements. In sum, the plaintiff argues that the guards "are now attempting to cover up their misconduct by withholding evidence of the assault that took place in the stairwell after [the plaintiff] was removed from the housing unit." ECF No. 53 at 2. The plaintiff also filed a separate motion for discovery, which asks that the Court compel the

defendants to disclose to the Court the recording from the camera that is located in the stairwell area where the alleged excessive force took place.

## II. Applicable Law

Under 28 U.S.C. § 636(b)(1)(C), this Court must conduct a <u>de novo</u> review of any portion of the magistrate judge's recommendation to which objection is timely made. Because the petitioner filed objections to the report and recommendation, the magistrate judge's recommendation will be reviewed <u>de novo</u> as to those findings to which objections were made. As to those findings to which objections were not filed, the findings and recommendations will be upheld unless they are "clearly erroneous or contrary to law." 28 U.S.C. § 636(b)(1)(A).

## III. Discussion

A. <u>Excessive Force Claims</u>

"[T]he Eight Amendment forbids 'the unnecessary and wanton infliction of pain'" by a prison official. <u>Hill v. Crum</u>, 727 F.3d 312, 317 (4th Cir. 2013) (quoting <u>Whitley v. Albers</u>, 475 U.S. 312, 319 (1986)). To prove an excessive force claim, a plaintiff must show: (1) that the prison official's use of force was objectively harmful such that it violates contemporary standards of decency; and (2) that the prison official's use of force was not "applied in a good-faith effort to maintain or restore discipline," but was intended to "maliciously and sadistically . . . cause harm."

5

Hudson v. McMillian, 503 U.S. 1, 7 (1992).  It is the nature of the force used, and not the extent of the injury caused, that serves as the relevant inquiry.  Wilkins v. Gaddy, 559 U.S. 34, 34 (2010).  However, "not every malevolent touch by a prison guard gives rise to a federal cause of action."  Id. at 37-38.  Thus, "an inmate who complains of a 'push or shove' that causes no discernible injury almost certainly fails to state a valid excessive force claim."  Id. at 38.

As to the excessive force claim against defendant Saad, this Court agrees with the magistrate judge that the plaintiff does not allege any personal involvement on the part of defendant Saad.  See Trulock v. Freeh, 275 F.3d 391, 402 (4th Cir. 2001) ("In a Bivens suit, there is no respondeat superior liability. . . . Instead, liability is personal, based upon each defendant's own constitutional violations.").  Thus, remedy under Bivens is not available against defendant Saad in her official capacity, and she must be dismissed with prejudice from this civil action.

The plaintiff does allege that the other defendants named in the excessive force claim all subjected him to excessive force.  However, this Court agrees with the magistrate judge that a review of the materials supplied by the defendants establishes that the force used was applied in good faith and in an effort to restore discipline and order.  In reaching this conclusion, this Court reviewed the DVD containing the Vicon surveillance video footage of

eight different views of the December 10, 2015 incident, the sworn declarations of the defendants involved, and the plaintiff's medical records.

The video surveillance shows that defendant Mulac did not throw the plaintiff to the ground without provocation. Rather, it shows that the incident began in the dayroom with the plaintiff's initial refusal to comply with defendant Mulac's directive to turn around to submit to a pat-down. The dayroom footage shows the plaintiff pushing defendant Mulac's hands away from him and then shoving defendant Mulac. The footage of the stairwell, specifically "View L4 Inner" and "View L4 Outer," shows defendants Smith and Mulac escorting the plaintiff without issue until the plaintiff begins to struggle again, at which point defendant Smith grabs the plaintiff and pulls him down. Defendant Mulac then assists defendant Smith in regaining control of the plaintiff. Other correctional officers arrive to help in subduing the plaintiff, and there does not appear to be any hitting, punching, or kicking. Once the plaintiff is subdued, he is escorted away from the area.

This Court also reviewed the sworn declarations of defendants Mulac and Smith, which clarify the views provided by the Vicon surveillance footage. Defendant Mulac's sworn declaration states as follows:

> The plaintiff refused multiple commands to submit to a pat search. He became aggressive and pushed and slapped

my hands away. He then became assaulted [sic] toward me,
knocking me to the ground. I did not know if he had a
weapon on him, and was concerned for my safety. I then
activated my body alarm. At this point, the inmate
started to comply, and I escorted him away from the other
inmates and out of the housing area. At that point, I
gave inmate Bates multiple commands to turn around and
cuff up. The inmate refused my commands. He then
appeared to raise his hands in my direction, and another
officer on site brought inmate Bates to the ground. That
officer, inmate Bates, and I fell to the ground, and
other officers, who had responded to the earlier body
alarm, were present and also attempted to subdue the
inmate. Once the inmate was subdued, he was escorted to
Health Services by a Lieutenant. I had no further
interaction with the inmate, and to the best of my
recollection, I was not involved in packing or shipping
the inmate's property.

ECF No. 37-2 at 2. Defendant Smith's sworn declaration states:

Another housing officer in the adjacent unit activated
his body alarm at approximately 7:51 am. When I arrived
on scene the other officer was escorting inmate Bates out
of the unit compound's side door. I witnessed inmate
Bates refuse multiple direct commands to turn and face
the wall. I then saw him begin to lift his hands towards
the officer, and at that point I intervened and brought
him to the ground. On the way to the ground, inmate
Bates landed on top of me. Other officers, who had
responded to the earlier body alarm, were present and
also attempted to subdue the inmate. Once the inmate was
subdued, he was escorted to Health Services by a
Lieutenant. I had no further interaction with the
inmate, and I had no contact with the inmate, and I had
no contact with his property.

ECF No. 37-3 at 2-3.

Additionally, the plaintiff's medical records do not support his claim that the defendants took him into the stairwell to continue beating him. The medical records from the plaintiff's first visit on the day of the incident show that the plaintiff had suffered no trauma except a superficial abrasion below the right

8

eye with swelling, and abrasions on the left elbow, right hand, right wrist, left knee, left hand, and third digit. ECF No. 37-4 at 6-7. The medical records from that visit also show that the plaintiff was in no apparent respiratory or cardiac arrest. Id. The plaintiff was seen by Health Services fifty-eight minutes after the incident. Id.

Thus, based on the video surveillance, the sworn declarations, and the plaintiff's medical records, this Court finds on de novo review that the plaintiff's excessive force claims against the other defendants must also be dismissed.

B. Deliberate Indifference Claims

The Eighth Amendment's prohibition of cruel and unusual punishments covers "the treatment a prisoner receives in prison and the conditions under which he is confined," Helling v. McKinney, 509 U.S. 25, 31 (1993), including the provision of medical care. Farmer v. Brennan, 511 U.S. 825, 832 (1994). "[A] prison official's 'deliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain proscribed by the Eighth Amendment.'" Scinto v. Stansberry, 841 F.3d 219, 225 (4th Cir. 2016) (quoting Estelle v. Gamble, 429 U.S. 97, 104 (1976)). To state a claim for an Eighth Amendment violation, a prisoner must establish that: (1) "the deprivation alleged [was], objectively, 'sufficiently serious'" and (2) the "prison officials acted with a 'sufficiently culpable state of

9

mind.'" Id. (alteration in original) (internal quotation marks omitted) (quoting Farmer, 511 U.S. at 834).

Under the first "objective" prong, an official's actions are "sufficiently serious" if the deprivation is "extreme," "meaning that it poses a serious or significant physical or emotional injury resulting from the challenged conditions, or a substantial risk of such serious harm resulting from . . . exposure to the challenged conditions." Id. (internal quotation marks omitted) (alteration in original). Where the prisoner alleges deprivation of medical care, the prisoner must establish "a 'serious' medical need that has either been diagnosed by a physician as mandating treatment or . . . is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." Id. (alteration in original) (internal quotation marks omitted).

Under the second "subjective" prong, prison officials must have acted with deliberate indifference. Id. "To prove deliberate indifference, plaintiffs must show that 'the official kn[ew] of and disregard[ed] an excessive risk to inmate health or safety.'" Id. (alterations in original) (quoting Farmer, 511 U.S. at 297). "[T]he plaintiff must show that the official was 'aware of facts from which the inference could be drawn that a substantial risk of serious harm exist[ed], and . . . dr[ew] th[at] inference.'" Id. (alterations and emphasis in original) (quoting Farmer, 511 U.S. at 297). Where the prisoner alleges deprivation of medical care, the

10

prisoner must show "the official's actual subjective knowledge of both the inmate's serious medical condition and the excessive risk posed by the official's action or inaction." Id. at 226 (internal quotation marks omitted) (brackets omitted). The prisoner must prove either that the official had actual knowledge of the medical condition and risk or that the risk was obvious. Id. Moreover, a claim for deliberate indifference requires more than mere negligence, as "deliberate indifference describes a state of mind more blameworthy than negligence," Farmer, 511 U.S. at 835, and "even officials who acted with deliberate indifference may be 'free from liability if they responded reasonably to the risk.'" Scinto, 841 F.3d at 226 (quoting Farmer, 511 U.S. at 844).

This Court agrees with the magistrate judge that the defendants' sworn declarations directly contradict the plaintiff's contentions. The plaintiff contends that, after the December 10, 2015 incident, he was not fed all day, received no treatment for his injuries, and was left in a holding cell for numerous hours. The defendants' sworn declarations state that, as soon as the plaintiff was cuffed and subdued, he was taken to Health Services by a Lieutenant. ECF No. 37 at 4. The defendants also attach a copy of the plaintiff's medical record for the visit to Health Services, which shows that the plaintiff received medical attention within an hour of the incident, and a total of four times within the first twenty-eight hours after the incident. ECF No. 37-4 at

11

6-7. Thus, the plaintiff cannot establish that the alleged deprivation was, objectively, sufficiently serious or that, subjectively, the defendants acted with deliberate indifference. Accordingly, upon de novo review, this Court finds that the plaintiff's deliberate indifference claims should be dismissed.

C. Destruction of Personal Property Claim

This Court also agrees with the magistrate judge that the plaintiff's destruction of personal property claim should be dismissed. The defendants contend that on May 12, 2016, less than one month after the plaintiff arrived at USP McCreary, the plaintiff received all of his personal property that was mailed from FCI Hazelton and signed the BP-382 form indicating that no items were missing. The plaintiff does not identify in his pleadings what items of his personal property were allegedly intentionally destroyed or missing when his property arrived from FCI Hazelton.

In his objections to the report and recommendation, the plaintiff contends that he "could not submit his property receipts to the Court as evidence because they are possessed by prison officials, and the defendants have not turned over to the Court [his] property receipts because . . . the property receipts show that [his] personal property was in fact either lost or destroyed by prison guards." ECF No. 59 at 6. However, there is no evidence on the record to support that contention. Thus, on de novo review,

12

this Court finds that the destruction of personal property claim should be dismissed.

D. Loss of Good Conduct Time

The magistrate judge found that the disciplinary action decisions resulting in loss of good conduct time are not cognizable in a Bivens action. The magistrate judge concluded that such claims should be brought under 28 U.S.C. § 2241. See Preiser v. Rodriguez, 411 U.S. 475, 487-88 (1973) (finding that challenges to the fact or length of confinement are properly considered in the context of habeas corpus). Furthermore, the magistrate judge found that, even if the misconduct charge were false, the plaintiff does not have a right to be free from disciplinary reports. See Lewis v. Viton, No. 07-3663, 2007 WL 2362587, at *9 (D.N.J. Aug. 14, 2007) ("The act of filing false disciplinary charges does not itself violate a prisoner's constitutional rights."). On de novo review, this Court finds that the magistrate judge is correct, and that any such claim seeking to expunge a disciplinary action and restore good conduct time should be dismissed.

E. Unknown Parties/John Doe Defendants

The magistrate judge found that the claims against the unknown parties/John Doe defendants should be dismissed for failure to timely effectuate service. A district court is not required "to wait indefinitely" for a plaintiff to provide a John Doe defendant's true identity to the Court. Glaros v. Perse, 628 F.2d

679, 685 (1st Cir. 1980). Here, it has been one year and over two months since the plaintiff filed his complaint. This Court agrees with the magistrate judge that the plaintiff has had more than sufficient time to provide the correct information in order to effectuate service on the John Doe defendants. Thus, on de novo review, this Court finds that the claims against the John Doe defendant should be dismissed.

F. Motion for Discovery

The plaintiff's motion for discovery asks that the Court compel the defendants to disclose to the Court the recording from the surveillance camera that is located in the stairwell area where the alleged excessive force took place. The magistrate judge recommends that the plaintiff's motion for discovery be denied as moot based on his recommendation that the defendants' motion to dismiss or, alternatively, for summary judgment, be granted. On de novo review, this Court finds that the motion for discovery should be denied on the merits rather than denied as moot.

In support of his argument, the plaintiff cites Ogurek v. Gabor, 827 F.3d 567 (7th Cir. 2016). In Ogurek, a case in which the plaintiff sought by motion the security video he claimed was the basis of his disciplinary action, the United States Court of Appeals for the Seventh Circuit held that "[t]he district judge erred in refusing to compel production of the security video, which

14

would have been the dispositive piece of evidence in this case." Ogurek, 827 F.3d at 568.

Upon review of the surveillance footage provided by the government, this Court finds that the government has already provided the surveillance footage requested by the plaintiff in his motion for discovery. Thus, this civil action is distinguishable from Ogurek. The relevant surveillance footage containing views of the stairwell, "View L4 Inner" and "View L4 Outer," is discussed above in the section dealing with the excessive force claims.

## IV. Conclusion

For the above reasons, the magistrate judge's report and recommendation (ECF No. 57) is ADOPTED AND AFFIRMED. The defendants' motion to dismiss or, alternatively, for summary judgment (ECF No. 36) is GRANTED. The plaintiff's motion for discovery (ECF No. 47) is DENIED, and the plaintiff's objections to the report and recommendation (ECF No. 59) are OVERRULED. It is ORDERED that this civil action be DISMISSED and STRICKEN from the active docket of this Court.

Should the plaintiff choose to appeal the judgment of this Court to the United States Court of Appeals for the Fourth Circuit on the issues to which objection was made or those that this Court otherwise determined de novo, he is ADVISED that he must file a notice of appeal with the Clerk of this Court within 60 days after the date of the entry of this order.

IT IS SO ORDERED.

The Clerk is DIRECTED to transmit a copy of this memorandum opinion and order to the pro se petitioner by certified mail and to counsel of record herein. Pursuant to Federal Rule of Civil Procedure 58, the Clerk is DIRECTED to enter judgment on this matter.

DATED:   March 13, 2018

/s/ Frederick P. Stamp, Jr.
FREDERICK P. STAMP, JR.
UNITED STATES DISTRICT JUDGE